C. G. Jones *et al.* v. Louella C. Holzapfel *et al.*

(Filed February 18, 1902.)

1. CITY COUNCIL—Authority of. Under a statute authorizing a municipal corporation to "provide for" the extension or construction of lateral sewers and which provides that the "actual cost of labor or material expended" in constructing such lateral does not limit the city council to the extension or construction of the work by the employment of laborers, or by permission of the respective lot owners to do the work themselves along and in front of their lots respectively but authorizes the city council to provide for such construction, by the making of a contract for the construction of the work as a whole, as was done in this case.

2. SAME—Implied Power. The authority of the city council to make the improvements specified, carries with it the implied power to make a general contract therefor, there being no statutory provision evincing a different legislative intent.

3. ASSESSMENTS BY CITY COUNCIL NOT TAXES. While the authority of the city council to make the improvements within the municipality, and to levy assessments therefor upon the property especially benefitted, is derived from the general power of taxation, yet such assessments are not "taxes" under that provision of the organic act which provides that "all property subject to taxation shall be taxed in proportion to its value." Such assessments are no part of those general taxes which are imposed for the purpose of carrying on the ordinary expenses of government, and do not fall within the prohibition of the organic act.

4. APPORTIONMENT OF LEVY—Inference. While the authority of the city council to "apportion" a levy to various lots might, in the absence of an especial direction, be regarded as a direction to apportion such levy equally, yet such inference or rule cannot be sustained in the presence of an express provision of the statute that the apportionment shall be made "according to the actual cost of labor or material expended in constructing such lateral along the lot assessed."

5. TAXES, TENDER OF—Relief In Equity. It is the general law that no one will be entitled to relief in equity to enjoin the collection of an assesment until he shall have shown that he meant to do equity by paying that portion of the tax assessed against him as it can be clearly seen that he ought to pay; and the owner of property will not be permitted to refuse the payment of a total assessment where it is clear that he ought to pay a part, and where it can be seen what that part is.

6. SAME—Not Necessary, When. But this rule has no application to a case like the present, where the entire tax fails by reason of an illegal assessment, and in such a case the assessment may be enjoined without the payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due.

(Syllabus by the court.)

*Error from the District Court of Oklahoma County; before*
*C. F. Irwin, Trial Judge.*

*John H. Wright, Hays, McMechan & Johnson,* and *Karnes, New, Hall & Krauthoff,* for plaintiffs in error.

°*J. R. Keaton* and *Douglas & Ramer,*│for defendants in error.

## STATEMENT OF FACTS.

This action was begun in the district court of Oklahoma county by the defendants in error, who prayed for an injunction to restrain the collection of assessments for the construction of lateral sewers. They alleged that they were the owners of property abutting upon the sewers which have been constructed under an ordinance passed by the city council of Oklahoma City, which provided that when the actual cost of such construction was determined, the city clerk should notify the owners of each lot assessed of the amount of his assessment, with penalty in case of failure to pay within ten days, and a direction to place the amount on the tax rolls of the county as a special assessment against such lots, to be collected as other taxes.

Thereafter, the mayor and city council of Oklahoma City, acting under this ordinance, advertised for bids for the construction of the sewers and having received several bids, accepted that of Black & Laird, claiming it to be the lowest bid received for their construction. That on the 8th day of July, 1901, the mayor and city council entered into a contract on behalf of the city with the firm of Black & Laird, for the construction in that portion of the city designated in the ordinance, and that in pursuance of the contract, Black & Laird have constructed lateral sewers, and have charged therefor a price largely in excess of the actual cost of labor and material required therefor, in order that they may make a large profit; that the city clerk has notified the owners of the lots abutting upon such laterals, of a pretended assessment against their res-

pective lots, and that unless paid certain costs and penalties will be added thereto, and that the assessment will be certified to the clerk of Oklahoma county, who threatens to extend the pretended assessment upon the tax rolls of the county, and that a cloud will thereby be placed upon the title of the plaintiffs to their respective lots, and that the plaintiffs had no adequate remedy at law.

The plaintiffs averred that the ordinance was void, because, (1), it attempted to confer power upon the mayor and councilmen to let the contract to a person outside of the mayor and city councilmen of the city for the construction of the sewers, and to levy a special assessment upon the abutting lots for the payment of the contract price, and, (2), that it attempted to authorize the apportionment of the costs of construction equally among the lots abutting upon the laterals thus built within one of the districts specified in the ordinance, in violation of the territorial statute, and, (3,). that the contract was void because it did not state the "actual cost of labor and material," and that it did not provide that Black & Laird should perform the work and furnish the material at the actual cost, without any profit thereon, and that Black & Laird had made a pretended assessment against each of the lots owner by the plaintiffs of a specified sum as the proportionate share of the cost of said construction, to be borne by each of the lots, and that this assessment was much in excess of the "actual cost for labor and material" used in the construction. The prayer was for an injunction, restraining the certification, extention upon the tax rolls, and of all steps toward the collection of these assessments.

The defendants, the mayor and city council, filed a general demurrer to the petition, alleging that it did not state a

cause of action. The defendants, Black & Laird, also separately demurred to the petition upon the usual statutory grounds. These demurrers were overruled by the court, to which exceptions were reserved. The defendants then filed their answer, containing a general denial of the averments of the plaintiffs' petition, and set forth the ordinance, (No. 262,) providing for the construction of the sewers in question, and averred that they had full and absolute authority to enact the ordinace, and to provide payment and make the special assessments to pay for them, and that the ordinance authorized them to proportion the costs and expenses of the said sewers against the lots abutting upon the said laterals, and included within the specified district. They denied the averments that any other bids had been received for the construction of the lateral sewers, lower or as low as that of Black & Laird, and said that they had accepted the bid of Black & Laird, and had entered into a written contract with that firm, which had entered upon the performance of their part of the contract, and had begun the construction.

The defendants denied "that said ordinance leaves the fixing of the amount to be charged for the construction of the lateral sewers to the defendants, Black & Laird," but alleged: "that the charges were fixed by the defendants, the mayor and city councilmen of Oklahoma City, based upon the estimates of the city engineer of Oklahoma City, which estimates were made and submitted to the mayor and councilmen before the contract was awarded to Black & Laird, and before any price was agreed or attempted to be agreed upon for the construction of the laterals." And they averred their right to fix the amount by contract with the defendants, Black & Laird. They answered further that the "price charged for the work of de-

fendants, Black and Laird, is not in excess of the actual cost. of constructing the same," and denied that the bid submitted by Black & Laird was in excess of that submitted by other bidders, and averred that the bids submitted by the defendants, Black & Laird, was the lowest and best bid submitted to the mayor and city councilmen. They further denied that "it is not provided in said ordinance and contract that Black & Laird should perform the work and furnish the material and labor necessary for the construction of the lateral sewers at the cost thereof," but alleged that said ordinance specifically contains said provision. They further denied that they were, as a mayor and city councilmen, "without lawful power and authority to pass the ordinance and execute the contract," but averred that they were fully authorized and empowered so to do, and that they had entered into the contract by virtue of the authority vested in them under chapter 6, article 3, of the Session Laws of 1897, and that they had acted in conformity with the law.

They further averred that the plaintiffs were now estopped from complaining of any alleged irregularity in the levying and collection of assessments, for the reason that the plaintiffs "well knowing that said work was progressing and was nearly, if not wholly completed, made no objection, and entered no protest and took no steps looking to the arrest of said special assessments upon the tax rolls or collecting of said special assessment, until the work was partly, if not wholly completed, and their respective lots benefited and enhanced in value by the improvement and well knowing said ordinance had been passed, and said contract had been executed with the defendants, Black & Laird, who had proceeded to perform the work, and now relied upon the assessments for their compen-

sation, and for the labor and material expended in the improvements, and alleging that every step taken in the matter had been taken by the city council in strict conformity with the law.

The plaintiffs demurred to the answer, upon the ground that it did not in law constitute a defense to the petition. The demurrer was sustained, to which ruling the defendants reserved an exception, and elected to stand upon their answer. The injunction was thereupon made perpetual against the defendants, and judgment entered for costs. To which finding and judgment exceptions were properly reserved, and the case brought here.

Opinion of the court by

McATEE, J.:   The questions to be determined in the case are, (a,) whether the city of Oklahoma City had the power to contract for the construction of sewers, or whether its power for the execution of that work was confined to the employment of servants and agents working for wages; (b,) whether the special assessments against abutting lots for the cost of local improvements were or were not "taxes," under the meaning of the organic act of the territory, which provides that "all property subject to taxation shall be taxed in proportion to its value;" (c,) whether, under the statute providing for the construction of lateral sewers, the cost of such construction should be apportioned equally among all the lots in a certain district, or whether the special assessment should be so apportioned that each particular lot should be assessed only with that portion of the total cost of the sewer which had been incurred in constructing the lateral sewer along and in front of the particular lot assessed; (d,) whether the plaintiffs in this case, by wait-

ing until the lateral sewer was constructed and their property enhanced in value, were not estopped from denying the power of the city to construct the sewers, and make the assessments in question, or (e,) whether the manner in which the assessment was made did not justify the plaintiffs in still invoking the equitable jurisdiction of the court on the ground that the apportionment of the total cost, and the assessments having been illegally made, did so mingle the amount which was due from the respective lot owners with an amount which was not due by them, that it was impossible to determine these respective amounts from any statement made in the pleadings, and that the relief sought ought to be granted notwithstanding the fact that a tender of the amount really due was not made or offered to be made in the petition by which the plaintiff sought relief.

The authority of the city council to make the contract under consideration is derived, if it exists at all, from the Session Laws of 1897, chapter 6, article 3, as follows:

"That in cities of the first class, the city council may, by ordinance, provide for the extension or construction of lateral sewers constructed at the costs of the city, and shall be authorized to levy a special assessment on all lots abutting upon such sewer, and shall apportion such levy to the various lots, according to the actual cost of labor or material expended in constructing such lateral along the lot assessed. If the lateral be built in a street or alley having lots on both sides, the cost shall be apportioned to the lots on both sides of such lateral. The costs of constructing such lateral across streets where no lots are abutting, shall be apportioned to all the lots assessed. Such assessments shall be made and be collected in the manner provided for levying and collecting special assessments in other cases, in cities of the first class."

It is contended by the defendants in error that the city council had no authority to enter into a contract, and that the contract made with Black & Laird was without warrant of law and void, and that there is no way by which the "actual cost of labor and materials" can be ascertained except by the actual construction by each lot owner of the lateral abutting upon his particular lots, or in case he neglected after due notice to construct such lateral, then by the city authorities themselves, and that, under the law as it exists in this territory, whether the work is done by the owner of the lot or lots or by the city authorities themselves, the materials used must be selected or designated by the authorities, and the labor performed under the supervision and direction of the city engineer and street commissioner; that that is what these officers are for, and that the statute contemplates that the construction of the laterals shall be done by the lot owners, and that this is the only way in which the taxpayers and lot owners know what the "actual cost of labor and material" is.

This position cannot be sustained. There is no such limitation upon the powers of the city council. The power expressly given is that the city council may, by ordinance, "provide for" the extension or construction of laterals. It is true that the "actual cost of labor or material expended" in constructing such lateral along the lot assessed constitutes a limitation, but it is a limitation upon the power of the council to incur costs and expenses, and not a limitation upon the manner or mode which they shall adopt to "provide for" the construction of sewers. If the city council did not exceed the "actual cost of labor or material expended" in constructing the sewer they are left free to "provide for" the work in the

manner in which they may find best suited for it, and in "providing for" the construction they may do so by contract with outside parties.

This contention is not open in this case, since the answer of the defendants averred that the charge for the work was "not in excess of the actual cost of constructing the same." The case is here upon demurrer to the answer, and the fact, as stated in the answer must be true, and is in strict compliance with the language of the statute. If it were not so, we should yet hold that the provision that the assessment should be "according to actual cost of labor¸ or material expended," was complied with by a contract which, in the terms of the answer, was given to a firm which made the, "lowest and best bid" submitted to the mayor and city council.

In *Hitchcock v. The City of Galveston,* 96 U. S. 341, the statute of the state of Texas had provided, by section 8, article 3, title 4, that the city council should have power "to establish, erect, construct, * * * culverts and sewers, sidewalks and crossways. * * * " The supreme court of the United States held that "The city is thus authorized itself to construct sidewalks and, though the cost of construction is to be defrayed by the abutting lot owners, the city is to collect from them the cost. * * * It is not to be denied that this section confers upon the city council plenary authority to construct the sidewalks, and to do whatever is necessary for the construction, not prohibited by some other provision of law. * * * And if the city council had lawful authority to construct the sidewalks, involved in the authority was the right to direct the mayor, and the chairman of the committee on streets and alleys, to make a contract on behalf of the city for doing the work. We spend no time in vindicating this proposition. It

is true the council could not delegate all the power conferred upon it by the legislature, but like every other corporation, it could do its ministerial work by agents. Nothing more was done in this case. * * * There was, therefore, no unlawful delegation of authority."

In *Cummin v. Mayor and City Council of Brooklyn,* 11 Paige, p. 600, it was provided by the 40th section of the city charter, that the common council should have general authority to cause the streets and avenues to be improved, and "drains and sewers to be constructed." And it was held there by Chancellor Walworth that under the general powers of a corporation, the mayor and city council were competent to enter into a "general contract" to do the work in the city, and that "there is nothing in the charter which prohibits the corporation from entering into general contracts for the making of such improvements."

In *Galveston v. Heard,* 54 Tex. 420, upon the power of the city to "construct" sidewalks, sewers, and so forth, and to provide for the cost of them, it was held that the city of Galveston had power to undertake the construction of sidewalks, but that the lot owners would only be liable for the actual cost, and that in providing for this actual cost the city had the power to contract for the improvements, and that the price which the city agreed to pay to the contractor was the actual cost of construction.

And it is said in Dillon's Municipal Corporation, vol. 2, sec. 810, that:

"Power to a municipal corporation to make local improvements, though the expense be directed in the constituent act

to be assessed upon the property benefited, gives the corpora-
tion, in the absence of provisions evincing a different legisla-
tive intent, the implied power to make general contracts there-
for."

Since, therefore, it has been held by the supreme court of
the United States that "authority to construct sidewalks" gives
to the mayor and city council authority to make a contract
therefor, an opinion which is agreed to upon the same statute
by the supreme court of Texas, and since it was held by Chan-
cellor Walworth that a section of the city charter which "gives
general authority to the common council to cause the streets
and avenues to be constructed" and that the mayor and city
council having the general powers of a corporation, are compe-
tent to enter into a general contract for such improvements,
and since there is no prohibition upon the city council from
entering into a general contract for the making of such im-
provements, and since this position is affirmed by Judge Dil-
lon, we may safely say that when the legislature of Oklahoma
authorized the city council "to provide for the extension or
construction of laterals to main or lateral sewers," that the
power was thereby expressly given to the city council to make
a general contract for such extension or construction.

It is further contended by the defendant in error that the
act under consideration is inconsistent, for the reason that it is
in violation of the provision of the organic act, that all taxa-
tion must be uniform and in proportion to the value of the
property subject to taxation. The provision is, that:

"No taxes shall be imposed upon the property of the
United States, nor shall any law be passed impairing the right
of private property, nor shall any unequal discrimination be

made in taxing different kinds of property, but all property subject to the taxation shall be taxed in proportion to its value. * * *" (Organic Act, section 6.)

It is conceded that the power derived from the state by which special assessments are made against abutting lots for the purpose of defraying the cost of local improvements, is derived from the power to collect taxes. But the authorities are uniform, to the effect that such assessments are no part of those general taxes imposed for the purpose of carrying on the ordinary expenses of the state, and do not therefore come within the provision of the organic law which requires that all taxes shall be according to the value of the property taxed.

It was said in *Emery v. San Francisco Gas Co.,* 28 Cal. 345, that the words "taxation" and "taxed" in section 13 of article 11 of the constitution of that state which provides that "taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value," relates to such general taxation upon all property as is levied to defray the ordinary expenses of the state, town and municipal governments, and not to assessments levied on the lots fronting on a street in a city to pay the expenses of their improvements.

The court there said that "there is another class of expenses, also of a public nature, necessary to be provided for, peculiar to the local governments of counties, cities and towns, and even smaller subdivisions, such as opening, grading, improving in various ways, and repairing highways and streets, and constructing sewers in cities, and canals and ditches for the purpose of drainage in the country. They are generally of peculiar local benefit. These burdens have always, in every

state, from its first settlement, been charged upon the localities benefited, and have been apportioned upon the various properties, but whatever principle of apportionment has been adopted, they have been known, both in the legislation and ordinary speech of the country, by the name of assessments. Assessments have, also, very generally, if not always, been apportioned upon principles different from those adopted in taxation, in the ordinary sense of that term; and any one can see, upon a moment's reflection, that the apportionment, to bear equally, and do substantial justice to all parties, must be made upon a different principle from that adopted in taxation, so-called."

The distinction is fully explained by Judge Dillon, in Municipal Corporations, vol. 2, secs. 755 and 778.

Section 778 is as follows:

"But aside from the rule of strict construction which applies to exemptions from taxation, the cases cited in the previous section will show that there is, in their ordinary use, a recognized difference between the words 'tax' and 'assessment,' and that the one does not always, or usually, include the other. Thus, a constitutional provision that 'taxation shall be equal and uniform throughout the state' does not apply to local assessments upon private property to pay for local improvements. So, a provision of the constitution of a state which requires 'the rule of taxation to be uniform,' in connection with another provision, that 'it shall be the duty of the legislature to provide for the organization of cities, and to restrict their power of taxation, assessment, etc., so as to prevent abuses in assessments and taxation,' is construed not to apply to special assessments by municipal corporations, made by authority of the legislature, for local improvements."

And the rule is announced by the supreme courts of

many of the states, among others, in *Garret v. St. Louis* 25 Mo. 505; *Hinds v. Leavenworth,* 3 Kan. 186; *Borough of Greensburg v. Young,* 53 Pa. St. 284; *Motts v. Detroit,* 18 Mich. 494; and by the supreme court of the United States in *Ill. Cent. R. R. Co. v. Decatur,* 147 U. S. 199.

But the improvements having been made, the assessment upon the various lots abutting upon which the extension of the lateral sewers was made, under section 3 of the city ordinance providing that "when said extension and construction is completed, the mayor and city council shall apportion the cost and expense of said extension and construction, calculating each section of section .1 of this ordinance separately, to the various lots abutting on such extension which shall be a special assessment against each and every lot abutting on said lateral sewer."

Under this section of the ordinance the total expense of the construction of the lateral sewers in each district in which the lateral sewers were respectively constructed was apportioned equally to each of the lots in such district. And this apportionment is resisted by the plaintiffs, not only upon the grounds previously stated, but also upon the ground that the Statute Laws of 1897, chapter 6, article 3, provides that: "The city council shall be authorized to levy a special assessment on all lots abutting upon such sewer, and shall apportion such levy to the various lots, according to the actual cost of labor or material expended in constructing such lateral along the lot assessed." The statute seems sufficiently plain if we pursue the rule by which we are required to accept a statute in its literal meaning, if that literal meaning be such as can be easily and readily understood, and which is susceptible of

enforcement. The statute here directs the special assessment to be made for the construction of each lateral sewer on all lots abutting upon such sewer, and then lays down the rule upon which such apportionment shall be made. We do not understand that the word "apportion" means that a certain ascertained sum shall be divided equally among certain persons. Apportion is simply, to divide. If the direction of the statute had been to apportion the total amount of cost ascertained for the lateral sewer, and had not furnished any rule by which the apportionment should be made, it would be fairly inferable that the legislative authority intended that the apportionment should be made equally. But the statute in this case does expressly fix a rule by which the apportionment shall be made, and it is not that of equality. It does expressly provide that the assessment of the various lots shall be "according to the actual cost of labor or material expended in constructing such lateral along the lot assessed." The method of apportionment here established is entirely practical. It may be difficult, but the actual cost of constructing such lateral along and in front of each lot assessed may be ascertained, and if the actual cost of the labor and material expended in constructing the lateral along all of the lots assessed which abut upon the lateral sewer under consideration be correctly ascertained, the special assessments will together constitute and make the total amount which is due for the construction of such lateral sewer. It is strongly contended by the plaintiff in error that the word "lot" should be read "lots" in order to complete a meaning which would sustain the apportionment of the total cost of each lateral sewer equally among all of the various lots abutting upon it. We are not at liberty to alter the language of the statute, in order to sustain a construction of it, simply

because that construction would result in an apportionment of the total cost to the various lots equally, instead of that meaning which we think the statute explicitly and with sufficient plainness expresses, that the rule of apportionment of the total cost of each lateral sewer shall not be that of equality, but shall be the actual cost of the construction of such lateral "along the lot assessed."

We think, therefore, that the apportionment was made upon an erroneous principle, the principle of equality, not authorized by the statute.

It is contended, however, by the plaintiffs in error that the plaintiffs below, the defendants in error, have now no standing in a court of equity, for the reason that they are estopped to deny the power of the city to construct the sewers under the contract, since they have been aware all the time that the ordinance was passed, the contract made and the work in process of completion, and that they have waited until the improvements were finished and their property benefited and they cannot in that condition of things, maintain in a court of equity an injunction, preventing the making of such assessments.

It may be conceded, and, indeed, the rule is well established, not only in all of the state courts so far as we have been able to see the decisions, but also clearly announced by the supreme court of the United States, that no one will be entitled to relief in equity to enjoin the collection of an assessment until he shall have shown that he meant to do equity by paying such portion of the taxes assessed against him, as it can be clearly seen that he ought to pay, and that the owner

of property will not be permitted to refuse the payment of a total assessment where it is clear that he ought to pay a part, and where it can be seen what that part is. He must first pay what is thus clearly due, and not while some portion of the taxes is manifestly due, embarrass the operation of government or any of its subordinate agencies, such as a municipal corporation, and thus throw the burden of public improvements upon either the corporation itself or upon those who have expended their money to the benefit of his property.

But it has been explicitly held by the supreme court of the United States, that this rule has no application to a case where the entire tax fails by reason of an illegal assessment, and that in such a case the assessment may be enjoined without the payment or tender of any portion of the tax, since it is impossible for the court to determine what portion is actually due. We now hold that the assessment made in this case was not made in conformity with the statute, is therefore without authority and illegal, and should be restrained. The pleadings in the case furnish to us no means of discriminating and ascertaining what portion of the assessment would be due if the assessment had been made in conformity to the law, and we must therefore hold that the whole assessment as made must fail, notwithstanding the fact that no part of the assessment was paid or offered to be paid. We do not here make a rule precluding the collection of the amount due from the abutting property, when the assessment shall be properly made, holding, as we do, that the contract under which the work was done was one which the corporation was authorized to make. (*Norwood v. Baker,* 172 U. S. 291 to 293; *State R. R. Tax Case,* 92 U. S. 575; *Northern Pac. R. R. Co. v. Clark,* 153 U. S. 252-272.)

It will be left to the plaintiffs in error to take such steps under the statute, as we construe it, to make a new apportionment upon the defendant's abutting property for so much of the expense of the lateral sewer against each lot as has been expended in constructing such lateral along the particular lot assessed.

The judgment of the lower court is modified and affirmed.

Irwin, J., who presided in the court below, and Burwell, J., not sitting; all the other Justices concurring.