Note.—See under (1) 35 Cyc. p. 907 (1926 Anno); (2) 35 Cyc. p. 991.

---

### CITY of PERRY v. JOHNSON.

No. 15217—Opinion Filed Jan. 27, 1925.

**Municipal Corporations — Constitutional "Debt Limit"—Special Assessments Against City Property for Improvements.**

Section 26, art. 10, of the state Constitution is a "debt" limit and not a "tax" limit provision, and does not apply to assessments for benefits occasioned by reason of public improvements levied against real estate owned by a municipal corporation.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Noble County; Claude Duval, Judge.

Action by A. R. Johnson against the City of Perry. Judgment for plaintiff, and defendant appeals. Reversed.

H. E. St. Clair, City Atty., G. A. Paul, M. Eugene Jordan, and McPherren & Wilson, for plaintiff in error

W. M. Bowles, for defendant in error.

Opinion by RAY, C. This case was submitted to the trial court under section 846, Comp. Stat. 1921, which authorizes parties to a question which might be the subject of a civil action to agree upon a case containing the facts upon which the contro-

versy depends, and submit it for decision to the court which would have jurisdiction if an action had been brought. The agreed facts are: That the city of Perry, defendant, is a municipal corporation and the plaintiff, A. R. Johnson, is a resident and taxpayer of that city; that the governing authorities of the city let a contract to I. E. Hanson for paving a certain portion of "D" street; that all the proceedings were regular and as required by law; that the contractor performed the work of improvement; that the report of the appraisers appointed to appraise the benefits was approved, and a proper ordinance was passed and approved levying the assessment against the several lots and tracts of land benefited, as required by law; that street improvement bonds were issued and delivered to the contractor in payment of the contract price for the work of improvement; that the city owned two lots abutting on the improvement on which is erected a public fire station building benefited by reason of the improvement; that the assessment upon one of the lots owned by the city amounted to $286.23 and against the other $289.76, which assessments are payable in equal, annual installments, with interest at the rate of 7% per annum; that the amount of said assessments exceeds annually the income and revenue provided for such year; that the assessment was not authorized by the voters of the city at an election held for that purpose; that the city was indebted in excess of 5% of the assessed valuation as shown by the last preceding assessment, and has levied taxes for the current year and made no provision for the payment of the assessment, and the six mill levy authorized by law is insufficient to pay the annual installments of the assessment charged against the property.

On these facts the following question was submitted for decision:

"Does section 26, art. 10, of the state Constitution, apply to assessments levied against public property or assessed against a municipality as and for benefits occasioned by reason of public improvements?"

That section of the Constitution is as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an

amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness; Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at' the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

While assessments are levied for improvements under the general power to tax, a distinction between such assessments and those general taxes imposed for the purpose of carrying on the ordinary expenses of government is recognized by the authorities generally as well as by this court. Jones v. Holzapfel, 11 Okla. 405, 68 Pac. 511; Riley v. Carrico, 27 Okla. 33, 110 Pac. 738; Allen v. City of Muskogee, 53 Okla. 230, 156 Pac. 315. The distinction is aptly stated in the latter case in this language:

"In a general levy of taxes, a contribution is exacted in return for the general benefits of government; in special assessments, the contribution is exacted because the property of the taxpayer is considered by the Legislature to be benefited over and beyond the general benefit of the community."

That distinction was more elaborately discussed by Justice Brewer in Illinois Central Railroad Co. v. City of Decatur, 147 U. S. ——, 37 L. Ed. 132. It is also clearly recognized by the Constitution of this state. By section 5, art 10, it is provided that "taxes shall be uniform upon the same class of subjects." By section 8:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value estimated at the price it would bring at a fair voluntary sale" —while section 7 of the same article reads:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

By these provisions of the Constitution taxes are required to be uniform upon the same class of subjects, and, where taxed ad valorem, must be assessed at its actual cash value, while the Legislature is given power to authorize the levy and collection of assessments for local improvements upon

property benefited **without regard to a cash value.** The Legislature has exercised that authority by the enactment of the paving law.

This brings us to the consideration of section 25, art. 10, especially as to the meaning of the word "indebted" as therein used. The term "indebtedness" has been so variously defined that no attempt will be made to define it here other than to quote from 31 C. J. 412:

"In its strict legal significance, the word 'indebtedness' applies only to an obligation arising from contracts, express or implied, and in this sense it is defined to be a sum of money due by certain and express agreement; that for which an action of debt will lie; the owing of a sum of money upon a contract or agreement, and, in common understanding, it is not less an indebtedness that such sum is uncertain. Although an indebtedness may exist without present liability to pay, an obligation which is not yet due and payable has been held not to constitute an indebtedness.

"The term 'indebtedness' has at times a signification far broader than the law dictionaries assign to it, a more general and common meaning, being often used in its large and general sense, and not in its technical one, not even involving of necessity the idea of money obligation. In its more general sense it is defined to be that which is due from one person to another; that which one person is bound to pay or perform to another. In this sense, it may include every obligation by which one person is bound to pay money, goods, or services to another; and not only every debt voluntarily contracted, but every debt of every nature however contracted or arising. As the equivalent to 'obligation,' the term may include a bonded debt, county warrants and bonds, or the bonds and mortgages of a corporation. The word 'indebtedness,' as used in the limitation placed upon municipal power, is given a meaning much less broad and comprehensive than it bears in general usage. As applied to municipal corporations, the term means what the corporation owes, irrespective of the demands it may hold against others"

—and on page 411:

"Judicial definitions of the term 'indebtedness' are numerous, and they must be read in connection with the facts out of which their necessity arose. Although the term has been said to have a fixed and well understood meaning, it is a wide term of large meaning; and it must be construed in every case in accord with its context."

By section 2, art. 12 (the homestead provision), the homestead is protected from forced sale for the payment of debts except for "* * * the taxes due thereon * * *."

By section 7, art. 10, above quoted, municipal corporations may be (and have been) authorized to levy and collect assessments for local improvements upon property benefited thereby, **homesteads included**, without regard to a cash valuation. This latter section expressly makes the homestead subject to special assessments for benefits received by local improvements, while, by the former, the homestead is protected from forced sale for assessments for local improvements, if such assessments be held to constitute an indebtedness within the meaning of the term as there used. We think this was an interpretation by the Constitutional Convention that the term debt as there used did not include a special assessment for improvements upon property benefited. Such was the reasoning in Riley v. Carrico, supra, by which the conclusion was reached that the word "tax," as applied to general taxation, does not include an assessment for benefits, and the conclusion is in harmony with the general interpretation as applicable to general taxes as stated in Cooley on Taxation (4th Ed.) 22:

"A tax is not regarded as a debt in the ordinary sense of that term, for the reason that a tax does not depend upon the consent of the taxpayer and there is no express or implied contract to pay taxes. Taxes are not contracts between party and party, either express or implied; but they are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making and enforcing of which their personal consent individually is not required."

The limitation fixed by the constitutional provision under consideration is a debt limit and not a tax limit provision. The distinction between a debt limit and a tax limit is recognized and pointed out by Cooley on Taxation (4th Ed.) 163:

"Debt limit provisions are to be distinguished from tax limit provisions. A constitutional or statutory provision limiting the power to create debts does not operate as a limitation on the taxing power of a municipality. In other words, the fact that the 'debt' limit has been reached does not affect the power to levy further taxes not in excess of the 'tax' limit. It is sometimes said, however, that where there is a constitutional provision limiting the amount of indebtedness that may be incurred, such limitation also operates as a restriction of the power of taxation; but this is true only to the extent that the Legislature has no power to levy a tax to pay a void debt, including a debt in excess of the debt limit where the limit is fixed by the Constitution, unless the claim is a moral one, on the theory that such a tax is not one for a public purpose."

The other questions presented in the brief

are out of the record, and were not presented to the trial court, and will, therefore, not be considered.

For the reasons stated, we think the debt limit fixed by section 26, art. 10, of the Constitution has no application to special assessments levied for benefits received by public improvements. The judgment of the trial court was to the contrary. We think the judgment should be reversed.

By the Court: It is so ordered.