## CITY OF LAWTON v. MORFORD et al.

No. 21134.   Opinion Filed Nov. 25, 1930.

Rehearing Denied Dec. 23, 1930.

A. J. Burton and G. A. Paul, for plaintiff in error.

Stevens & Cline, for defendants in error.

RILEY, J.  R. B. Morford, for himself and others similarly situated, brought this action in the district court of Comanche county to enjoin the city of Lawton from paving a strip of land 26 feet wide surrounding what was known as Gore boulevard, together with cross streets 34 feet wide, and to enjoin the levying of assessments according to benefits to be derived from the paving project as against the middle portion of said boulevard, and to enjoin the issuance of paving bonds based upon such proposed improvements, abutting city owned property, and to enjoin the levying of taxes against all taxable property within said city as proposed, to be levied in ten annual equal installments to provide funds to pay interest and retire such paving bonds so proposed to be issued.

Mabel LeMaster, as a taxpaying citizen, intervened, and likewise sought injunctive relief.

Gore boulevard was a thoroughfare of approximately 270 feet in width and a mile in length, situated within the city of Lawton. It was dedicated as a boulevard in the year 1901-09, by the federal government in recorded plats.  By ordinances, the last of which is dated September 10, 1929, the city of Lawton diverted the larger and middle portion of said boulevard so as to form out of it a part of the park system of said city. Shortly thereafter the city commenced a project to pave a roadway, theretofore a part of the whole boulevard, now surrounding said park as by ordinances converted, together with cross-sections at intervals of each city block.

In the presentation of the case below it was agreed that the purpose of said city was, unless enjoined, to assess the cost of paving proportionately against abutting property owners.  As shown by the maps contained in the record, the property to the north and to the south abutting the paving project is largely, if not wholly, individually owned, yet the city, by virtue of its ownership of the middle portion of the boulevard, or park as converted, and by reason of the proposed pavement of cross streets which abut upon the park as converted, owns much more than 50 per cent. of the abutting property, and it is agreed that the city's liability, by virtue of its ownership of said land, would be $63,000, whereas the record shows that the whole project of paving amounts to the cost of $93,973.95.

It is stipulated in the record that the city has no funds to meet any payment for the proposed improvement, and that no appropriation has been made therefor, and that the question of such liability for such a project has never been submitted to the voters of said city.

Likewise it is stipulated that the assessment for the cost of the city's share of such paving will, unless enjoined, be levied against all property within the city subject to taxation, in ten equal annual installments.

The judgment below granted the injunction as sought.  The city of Lawton appeals.  The judgment below was based upon the principle that under the issues as joined a debt was about to be created against the city of Lawton in violation of article 10, sec. 26, Constitution of Oklahoma.

The city of Lawton contends in its first

assignment of error that an assessment for paving is a forced charge for benefits, imposed by operation of law, and that the same does not create an indebtedness between the parties.

With the first part of the general statement of the law we agree, in so far as an individual property owner is concerned, for, as stated in Alley v. City of Muskogee, 53 Okla. 230, 156 Pac. 315:

"A 'special· assessment' is an enforced proportional contribution to pay the cost of a local improvement, levied only occasionally, as required, upon a limited class of persons, who are interested in such improvements, and presumed to be benefited by it to the extent of the assessment." Riley v. Carrico, 27 Okla. 33, 110 Pac. 738; Jones v. Holzapfel et al., 11 Okla. 405, 68 Pac. 511.

We bear in mind that a special assessment is not a tax in its general meaning, but an enforced assessment for betterment to real property as benefited. While there are limits beyond which taxes for general governmental purposes cannot go, yet, generally speaking, special assessments are not considered as a part of the general ad valorem tax so limited.

The plaintiff in error states in its third proposition for reversal as follows:

"Section 26, art. 10, Constitution of the state of Oklahoma, is a limitation of indebtedness, voluntarily incurred."

With that statement we agree. However, as we view it, under the facts presented in the case at bar, the assessment of $63,000, about to be made against the city of Lawton, is a voluntary contractual obligation, and, being so, it falls within the inhibition contained in the constitutional provision cited.

As applied to an individual owner of real property, there is no limit, in the absence of a sufficient protest, as to the amount for which his property may become liable for special assessment occasioned by benefits to his property, but, as applied to a municipality, there is a limitation in the event such liability is contractual or voluntary. That limitation is contained in section 26, art. 10, Constitution, which reads as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness. * * *"

That constitutional provision is not a limitation upon individual property owners, but upon municipalities, counties, cities, towns, townships, school districts, and other political corporations and subdivisions of the state as therein named.

Section 27, art. 10, Constitution, as a corollary to section 26, supra, permits a city, by a majority vote of qualified taxpaying voters voting, to become indebted beyond the 5 per cent. limitation contained in section 26, for exclusively owned public utilities. Parks have been held to be such public utilities (City of Ardmore v. State, 24 Okla. 862, 104 Pac. 913), but a public street is not a public utility. Coleman v. Frame, 26 Okla. 193, 109 Pac. 928; Hooper v. State, 26 Okla. 646, 110 Pac. 912; Dingmon v. Sapulpa, 27 Okla. 116, 111 Pac. 319.

Hereinafter we set out some strong phrases contained in decisions which when lightly considered might tend toward the conclusion that the phrase "in any manner, or for any purpose," as applied to indebtedness of municipalities, ·constitutes an insurmountable barrier beyond which indebtedness would not be countenanced, yet we know municipalities are frequently forced to pay for torts for which they are adjudged to be liable without regard to the tax limit (Canton v. Mansfield, 108 Okla. 60, 233 Pac. 1071) ; and, again, municipal subdivisions are forced to pay for the maintenance of prisoners where to free them upon society would be in violation of criminal statutes and have a tendency to destroy government .that exists for the very purpose of enforcing constitutional mandates. Smart v. Board of Com'rs, Craig County, 67 Okla. 141, 169 Pac. 1101. So, we conclude that the constitutional inhibition is applicable where the indebtedness is voluntarily incurred, and that such proposed indebtedness is voluntarily incurred where, as in the case at bar, the city owns more than 50 per cent. of the property to be improved and by its acts, through its officers, puts in motion the project. 44 C. J. 1135 p. 4073; Feil v. Coeur D'Alene (Idaho) 129 Pac. 643, 43 L. R. A. (N. S.) 1095.

In City of Ottumwa v. Water Supply Co., 119 Fed. 315, it was held:

"The Constitution says: 'No municipal

corporation shall be allowed to become indebted in any manner or for any purpose, more than five per centum on the last assessment,' etc. The words 'for any purpose' seem to cover a system of waterworks, and the words 'in any manner' are broad enough to cover a 'two-mill levy.' If these words do not so mean, then, as I believe, they are utterly without meaning or force."

We are not unmindful of the decision of this court in City of Perry v. Johnson, 106 Okla. 32, 233 Pac. 679, wherein it was held that section 26, art. 10, Constitution, is a "debt" limit and not a "tax" limit provision, and that the same does not apply to assessments for benefits occasioned by reason of public improvements levied against real estate owned by a municipal corporation, for, as therein shown, the city owned less than 50 per cent. of the property included in the project (in fact, only two city lots), and it is clear that the indebtedness was involuntary. While we are of the opinion that the result reached therein is sound, we cannot follow the reasoning therein employed, for, as said in the Eighth Circuit Court of Appeals in the Ottumwa Case, supra, in regard to the contention that the constitutional provision being a "debt" limit, but not a "tax" limit:

"This contention of the appellant is based upon a palpable jugglery of phrases and cannot be maintained. If it can, the constitutional provision above quoted, which prohibits any municipality from becoming indebted beyond the specified limit, in any manner or for any purpose, is delusive and of no avail to protect the taxpayers."

The constitutional provision stays the municipality from becoming indebted upon its own volition. There is no logic in withdrawing the constitutional safeguard, and we decline to do so by jugglery of phrases.

The plaintiff in error relies upon Dillon in his valuable work on Municipal Corporations (5th Ed.) section 193. That text is contrary to the contention urged upon us; it reads:

" 'Debt' and 'indebtedness,' as used in the Constitution, are not used in any technical way, but in their broad, general meaning of all contractual obligations to pay in the future for considerations received in the present."

And:

"Under these principles it has been held that liabilities such as the following are indebtedness within the meaning of these constitutional provisions: * * * Street improvements. * * *"

We note also the expression of Mr. Justice Miller, in Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820:

"The language of the Constitution is that no city, etc., 'shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not become indebted. · Shall not incur any pecuniary liability. It shall not do this in any manner; neither by bond, nor notes, nor by express or implied promises. Nor shall it be done, for any purpose; no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

And we note the expression of Mr. Justice Harlan in Buchanan v. Litchfield, 102 U. S. 278:

"The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers, beyond all question, was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount. * * * No legislation could confer upon a municipal corporation authority to contract indebtedness which the Constiution expressly declares it should not be allowed to incur."

How will the $63,000 to be assessed against the city of Lawton for betterment of its park property be paid? The agreed answer is: By general tax levy, assessed upon all property within the municipality subject to taxation, and extending over a period of ten years. Our judgment is that the same would constitute a debt, being an obligation, and that which would be due from the municipality to the holder of the paving bond, and in an amount evidenced by the bonds which the city of Lawton would be bound to pay, and the whole transaction would carry a liability on the part of the city to make the levy for the collection of the money to meet the obligation. For definition of the word "debt," see Webster's New International Dictionary. This situation, as we view it, has all the earmarks of proposed indebtedness. To say the transaction does not create a debt is to play with words and deceive oneself in failure to use ordinary understanding while straining at expressions contained in decis-

ions illy considered or not bearing upon the point.

We recall a decision brought to the attention of this court in the consideration of the issues here within it was ironically reasoned that if such special assessments were not debts and so within the constitutional safeguard, a citizen might have his property taken from him and sold to pay the public tax should the burden from public improvements reach such proportion (being unlimited by constitutional provision) that it together with general taxes would confiscate private property, and yet the citizen could console himself and gain much comfort in knowing that he kept his citizenship and residence in a place where the government was limited to reasonable bounds in the amount of tax or payment to be exacted for maintenance of government.

It is urged by plaintiff in error that by reason of chapter 173, S. L. 1923, sec. 20, the project presented constitutes no municipal obligation, and therefore no violation of the constitutional provision quoted.

The statute provides:

"* * * Which bonds shall in no event become a liability of the city or town issuing the same."

But herein the city is proprietor. The paving bonds to the extent of $63,000 will, unless enjoined, be issued and sold as against city owned property, and unless enjoined assessments will be levied against all taxable property within the city to pay the bonds and interest thereon based upon an enhanced value or betterment to city property. Upon failure of the city to make the levy as a part of general taxes and thus to abide the contract, judgment will or can be taken against the municipality for the amount of detriment suffered by the bondholder. Clark v. City of Weatherford, 143 Okla. 165, 288 Pac. 278; McLean v. Bloomington, 106 Ill. 209.

"A promise to pay a certain amount, with interest, within a fixed time, out of taxes taken from all the people, including those not benefited, would seem, to most peop'e, to be a debt." City of Ottumwa v. Water Supply Co., supra.

And in the cited case, regarding a provision for nonliability against the city, as urged in the case at bar, it was said:

'We think the taxpayer in future years will regard this scheme as a subterfuge to deprive him of the protection of the Constitution and that the thought will force itself upon him that a city creates an indebtedness when it borrows money to be paid with interest, from taxes in the future, whether such taxes are formally levied at one time covering that future, or yearly to meet the payments when they do mature."

But the plaintiff in error continues its argument in support of its contention by urging that the statute, chapter 173, S. L. 1923, sec. 20, in regard to paving public property, provides:

"Public Property. Any property which shall be owned by the city, town, or county, or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school board, or board of education, within such district to be assessed, shall annually provide by the levy of taxes in a sufficient sum to pay the maturing assessments and interest thereon."

Therefore, they conclude, in effect, that, since an individual property owner may be coerced in payment of special assessment for betterment to his property when he stands in minority, the city may by reason of the statute be coerced in payment for such improvement at all times, and especially when no sufficient protest has been made. The fallacy of such argument, under the facts in this case, is apparent.

First. No sufficient protest could here be lodged on behalf of individual property owners, for the city owns more than 50 per cent. of the property to be improved. Second. As applied to the municipality, the Constitution makes protest for it, at least when the indebtedness is voluntary. Third. Where the city owns more than 50 per cent. of the property to be improved and the city by its officers sets in motion the project of improvement, its resulting obligation is contractual and voluntary. The conclusion is that an indebtedness would thereby be incurred, within the meaning of section 26, art. 10, Constitution, which indebtedness to be lawful must be within the income and revenue provided for that year or the question of indebtedness must have been submitted to the voters and must have been sanctioned by three-fifths of the voters of the municipality who voted thereon, providing the issue of indebtedness is not one of purchasing or constructing or repairing a public utility to be owned exclusively by such city, in which case only a majority of the qualified property taxpaying voters of such city, voting, is sufficient to authorize the indebtedness under section 27 of article 10, Constitution. Schmoldt v. Oklahoma City, 144 Okla. 208, 291 Pac. 119.

Since it is agreed that the funds are not on hand and the matter of indebtedness has not been submitted to the voters in any form, the judgment granting the injunction must be sustained. The case of O'Neil Eng. Co. v. Ryan, 32 Okla. 738, 124 Pac. 19, is helpful as bearing upon the issues here presented. Therein from citation it was said.

"A debt is money due upon a contract, without reference to the question of the remedy for its collection."

And in the text we read:

"And while it is true that the provisions of the Constitution should never be given a strained or forced construction, so as to defeat legitimate contracts brought fairly within its terms, yet the courts should at all times, with firm hand and inflexible purpose, heedless alike of public clamor and the public improvement craze, hold to the steady course and safe channels chartered by that instrument."

See, also, City of Drumright v. McCormick, 118 Okla. 240, 247 Pac. 25, as to liability of city for improvement of its property, as well as Berry v. City of Stillwater, 49 Okla. 560, 153 Pac. 870, and we find nothing contained in the recent case of Clark v. City of Weatherford, 143 Okla. 165, 288 Pac. 278, contrary to the views herein expressed.

Observe, also, the dissertation of Justice Williams contained in Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778, as to the purpose of the constitutional limitation and the meaning of indebtedness:

"Our ancestors, on account of the unlawful assumption and abuse of the taxing power, were moved to resist English kings, and as a result our great charters of liberty were acceded to. By the attempted exercise of the right of taxation without the consent or approval of those who were to be taxed, the fires of the Revolution were kindled, lighting the way to the establishment in the New World of a republic that demonstrated the practicability of popular government. In the history of the framing, revising and amending of the Constitutions of the several states, we have an illustration of the efforts of the people to protect themselves against the government taxing agency. In England it was against the crown; in the American states against the improvident assumption of their representatives. Taxes levied and derived from the people are in every instance an appropriation by the people to the government, to be expended in furnishing protection, security by the government within its proper functions and facilities for the public welfare. This principle is a characteristic of the wake of Anglo-Saxon liberty, and has resulted as a re-straint upon the government in preventing extravagant expenditures, as well as unjust and tyrannical action against the rights of private property. Property is never secure from the lawless grasp of the government, unless the means of existence of the government depend upon the voluntary grants of those who own the property. Hence we find the limitations, checks and restraints in our Constitution.

'The settled purpose has been to place restrictions and limitations upon the taxing power, by a restriction upon the outlay of the money after it has been collected from the people. Under these provisions the government is dependent from year to year upon the periodical vote of supplies. In some instances this vote will come from the representatives or agents, who are newly chosen by the people, and who will be expected to reflect their views regarding the public expenditures. Whenever a debt is to cover a period of years, it is never to be valid, except when approved by a vote of the electors of the particular subdivision of the state directly involved. Authority must be shown for every levy of taxes, not only in the state at large, but also in the political subdivisions thereof. In this state, authority is derived from the sovereign people; in the political subdivisions, from the state; and the same must be levied in the manner prescribed in delegating the authority. No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness. In times of popular clamor and excitement the internal improvement craze often well-nigh wrecks the most flourishing counties and towns, even in staid and conservative commonwealths.'"

In Fairbanks-Morse Co. v. Geary, 59 Okla. 22, 157 Pac. 720, it was held:

"The constitutional and these statutory inhibitions plainly say and mean that the limitations therein prescribed shall not be exceeded, neither directly nor indirectly. They were adopted for the protection of the people, and it is the duty of the courts and the municipal officers to see that they are strictly enforced."

The case of Barber Asphalt Paving Co. v. City of St. Joseph (Mo.) 82 S. W. 65, relied upon by plaintiff in error, does not, as we view it, turn upon the issue involved here, for therein it was said:

"* * * It is sufficient to say that there is not any evidence whatever in the record in regard to the income and revenue of the defendant city, and hence nothing to bring the tax bills or judgment within the inhibitions of this section of the Constitution."

See, also, as to restrictions upon indebted-

ness the case of Zachary v. City of Wagoner, 146 Okla. 268, 292 Pac. 345.

From our consideration of the case at bar, we find nothing that would prevent the public improvement project contemplated from being submitted to a vote of the people of the city of Lawton, and in the event of approval by the people there is nothing to prevent realization of the plan. However, the decisive point here is that such indebtedness has not as yet been so submitted to a vote of the people concerned, and consequently the judgment is affirmed.

MASON, C. J., LESTER, V. C. J., and HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. HUNT, J., dissents. CLARK, J., absent, not participating.