**HOOD, Chairman, et al. v. JONES et al.**

No. 26575.  Oct. 29, 1935.

T. Jack Foster, for plaintiffs in error.

R. O. Smith, Jr., for defendants in error.

RILEY, J. This is an appeal from a judgment of the district court of Cleveland county awarding a peremptory writ of mandamus commanding the plaintiffs in error, in their official capacity as officers of the city of Norman, to provide in the estimate of needs of said city for the fiscal year 1935-36, a sum sufficient to pay one annual installment of a paving assessment made and levied against said city in special paving district No. 36, in said city, together with a sum sufficient to pay the interest on the unpaid balance of said assessment, and a sum sufficient to pay one installment of an assessment made and levied against said city in special improvement district No. 40, together with a sum sufficient to pay the interest on the unpaid balance of said assessment, amounting in all to $8,931.52.

This action was commenced by the defendants in error, and the petition contains two separate causes of action based upon alleged proceedings in the respective special improvement districts.

The record in this case presents these questions: May a city become liable for the expense of paving streets opposite triangular or other irregularly shaped lots or tracts, where such expense exceeds the amount of revenue provided for the general fund of such city for that purpose for the fiscal year in which the improvements are made? If so, how the money shall be raised with which to pay same, without the approval of three-fifths of the voters of the city voting at an election held for that purpose?

In this case all assessments levied against lots or tracts owned by the city were paid when they fell due.

The assessments here involved were made against the city for and on account of paving laid opposite triangular or other irregularly shaped lots or tracts, privately owned, and for the excess of the costs over the benefits accruing.

Section 4594, C. O. S. 1921, in force when the paving was laid, among other things, provides:

"* * * When triangular or other irregularly shaped lots or tracts are to be assessed for any such improvements, any part of the cost of such improvements in excess of the benefits accruing to such lots or tracts shall be borne by the city."

In each case assessments against the city were made payable in ten equal annual installments the same as against individually owned property. The city paid the first four installments in district No. 36, and the first two in district No. 40.

Section 4610, C. O. S. 1921, provides that the bonds issued in payment for such special improvements shall in no event become a liability of the city.

It will thus be seen that the city of Norman could not become liable upon the bonds, as such, held by the plaintiffs in this case. But there is no contention that the city is liable on the bonds as such. The contention is that, the city having recognized the liability under the statute and passed ordinances providing for the ten annual installments, it is the plain duty of the city officials to provide for a tax each year to pay one installment and interest on the unpaid balance.

The contention of plaintiffs in error is that the only method by which a city may pay such expense is by payment out of the general revenues, or as provided in section 575, R. L. 1910 (sec. 4550, C. O. S. 1921).

In this they are mistaken. Section 575, R. L. 1910, providing for issuance of bonds, has reference only to street intersections.

By section 4594, supra, the mayor and council may, in their discretion, provide for the payment of the cost of improving street intersections and alley crossings out of the general revenues, or by bond issue as provided in section 575, R. L. 1910 (section 4550, C. O. S. 1921). In such case the matter is within the discretion of the mayor and council. If the obligation to pay is assumed by the city, it is purely voluntary, and the expense thereof may be paid out of the general revenue of the city if a sufficient sum be available. But if a sufficient amount be not available, then the assent of three-fifths of the voters voting at an election for that purpose must be obtained, in which case bonds may be issued.

But the mayor and council have no discretion under the statute in the matter of paying the cost of paving opposite triangular or other irregularly shaped lots or tracts in excess of the benefits accruing thereto by reason of such paving. The requirement that the city should pay in such cases is one

appearing to be imposed by law. The distinction then is between an obligation voluntarily assumed and one imposed by law.

In City of Lawton v. Morford et al., 146 Okla. 222, 293 P. 1068, it is held that a city may not voluntarily institute a paving project where it is the owner of a major portion of the area to be benefited by the pavement proposed, and that by so doing the city was voluntarily assuming an indebtedness prohibited by section 26, art. 10, of the Constitution.

It may then be considered as settled that a city may not voluntarily incur an obligation to pay for a paving project, even for the benefit of property owned by such city, where the cost thereof exceeds the revenues provided for such purpose for the fiscal year, and the proposition has not been submitted to the voters at an election held for such purpose, and assented to by three-fifths, of the voters voting at such election.

City of Perry v. Johnson, 106 Okla. 32, 233 P. 679, is a case involving the liability of the city for the payment of assessments levied against property owned by the city where the cost thereof exceeded the revenue of the city for the fiscal year in which the paving was laid. It was there held that section 26, art. 10, of the Constitution is a debt limit and not a "tax" limit provision, and does not apply to assessments for benefits occasioned by the paving. The assessment was upheld upon the apparent theory that no debt was created against the city within the meaning of section 26, art. 10, of the Constitution.

This theory was condemned in City of Lawton v. Morford, supra. But the court in, the Morford Case said that the result reached in the Perry Case was sound, and this upon the apparent theory that the obligation in the City of Perry Case was involuntary. It may be said further that it is, authorized by section 7, art. 10, of the Constitution, which provides that:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to the cash valuation."

It may be observed that therein no property benefited by such local improvements is exempted. While it is true that the property owned by the city could not be sold for such assessments, nor taxed for the purpose of raising the money with which to pay the assessments, assessments may nevertheless be made. Authority therefor is found in section 4593, C. O. S. 1921. See Berry et al. v. City of Stillwater, 49 Okla. 560, 153 P. 870.

But herein we are not dealing with assessments upon property owned by the city of Norman, but with assessments levied against the city as a whole, not in payment for paving made opposite any property owned by the city, but in payment, in part, for pavement laid opposite property owned by individuals, aggregating in one district $16,185.17, and in the other district some $1,181.74, in both cases in excess of the revenue provided for the fiscal year. That the result was the creation of a debt against the city can hardly be questioned.

The general rule appears to be that where a paving project is undertaken at the expense of a city or other municipality, if it undertakes the payment from the general revenue, and the expense is in excess of the amount which can properly be appropriated for that purpose from money on hand or in course of collection, then a debt is incurred to the amount of such excess.

When in the instant case, it was decided that the expense of paving opposite certain triangular or irregularly shaped lots or tracts was in excess of the benefits accruing to such lots by reason of such improvements, and that such excess expense should be borne by the city of Norman, a debt was incurred by the city to the extent that such cost assumed by the city exceeded the amount which could have been properly appropriated for that purpose from money on hand or in course of collection, that is, revenue provided for that purpose for the then current fiscal year.

But it was at the same time an obligation imposed by law and one not voluntarily assumed, for the statute expressly provides that the expense of paving opposite such lots, to the extent that same exceeded benefits accruing, should be borne by the city.

Applying strictly the rule announced in City of Lawton v. Morford, supra, then the limit imposed by section 26, art. 10, of the Constitution does not apply, for the debt was neither contractual nor voluntary.

But the question then arises, Is it within the power of the Legislature to impose such liability upon a city where the result is to impose a debt or liability upon a city in excess of the revenue provided in such fiscal year?

The plain provisions of section 26, art. 10, of the Constitution prohibit it. It says:

"No * * * city * * * shall be allowed to become indebted in any manner or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose."

This constitutional provision is binding upon the Legislature as well as the city. The Legisʿature may no more impose the debt upon the city than the city may voluntarily incur it. The only power under the Constitution to authorize such indebtedness is in the voters of such city voting at an election held for that purpose.

In Byrum et al. v. City of Shawnee, 83° Okla. 16, 200 P. 183, it is held that the city of Shawnee under its charter, which adopted the street improvement law of the state, article 12, ch. 10, R. L. 1910, as a part thereof, could not issue special street improvement bonds in payment of the expense of paving street intersections and alley crossings. But it is therein pointed out that under the charter provisions, the city might possibly have, in some proper way, pledged to the contractor, in advance of their collection, the proceeds of special tax levies to be spread over a period of five or more years, in payment of the expense of paving street intersections and alley crossings.

The "proper way" was not pointed out, but it is clear under the constitutional provision that the question of incurring the indebtedness running over a period of years must be submitted to the voters for their approval or rejection.

It is pointed out in City of Lawton v. Morford et al., supra, that there was nothing to prevent the paving project there under consideration from being submitted to a vote of the people of the city, and in the event of their approval there was nothing to prevent the final realization of the plan.

In this case there was nothing to prevent the submission of the question of the city of Norman incurring the indebtedness in question to a vote of the people at an election held for that purpose, and upon their approval the completion of the project, unless the indebtedness thus to be incurred, together with other existing indebtedness of the city, other than that incurred on account of public utilities, as provided in section 27, art. 10, of the Constitution, exceeded 5 per centum of the valuation of the taxable property within the city.

The stipulation of the parties in this case is that the net bonded indebtedness of the city, other than public utility indebtedness, was, as of June 30, 1923, $234,165.34 and the assessed value of the taxable property in said city for that year was $3,116,566.30, 5 per centum of which is $155,828.31, the limit for which the city of Norman could then have become indebted for other than public utility purposes. The city was already indebted some $79,000, over and above the limit provided in section 27, art. 10, of the Constitution. It will then be seen that the voters of the city could not, under the Constitution, authorize the indebtedness here involved, unless the same be considered as for a public utility.

In Coleman v. Frame, Co. Clerk, et al., 26 Okla. 193, 109 P. 928, and in Dingman v. City of Sapulpa, 27 Okla. 116, 111 P. 319, it was held that street improvements do not constitute "public utilities" within the meaning of section 27, art. 10, of the Constitution.

It follows that neither the city of Norman, through its governing body, nor the voters of said city could legally incur the indebtedness here involved.

The judgment is reversed, with directions to deny the writ.

McNEILL, C. J., and BUSBY, CORN, and GIBSON, JJ., concur.