## HARRIS *v.* McGOVERN.

1. Continuous adverse possession of lands in California for five years bars an action of ejectment, if the plaintiff or those under whom he claims were under no disability when the cause of action first accrued.
2. When the Statute of Limitations begins to run, no subsequent disability will arrest its progress.

ERROR to the Circuit Court of the United States for the District of California.

This is ejectment, commenced Jan. 10, 1870, by Edward H. Harris, Isaac H. Shimer and Letitia his wife, against John McGovern and others. A jury having been waived by written stipulation, the court tried the issue, and found the following facts : —

1. The land in controversy is known as one hundred vara lot, No. 19, of the Laguna survey, and is situated within the corporate limits of the city of San Francisco, as defined in the act incorporating said city, passed by the legislature of the State of California on the fifteenth day of April, 1851; but lies west of Larkin Street and northwest of Johnson Street, as they existed prior to and at the time of the passage of certain ordinances by the common council of said city, which were afterwards ratified by an act of the legislature of said State, entitled " An Act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the common council of said city," approved March 11, 1858. Said land is also within the

boundaries designating the lands to which the right and title of the United States were relinquished and granted to said city and its successors by the act of Congress entitled "An Act to expedite the settlement of titles to lands in the State of California," approved July 1, 1864.

2. On the twenty-fifth day of September, 1848, T. M. Leavenworth was alcalde of the pueblo or town of San Francisco, which was subsequently incorporated as the city of San Francisco, and on said day, as such alcalde, he made a grant in due form of the land in controversy to a party designated in said grant by the name of Stephen A. Harris, which grant was duly recorded in the official book of records of grants kept by said alcalde, and now constituting a part of the records of the office of the recorder of deeds of the city and county of San Francisco.

3. At the date of said grant there was residing at said pueblo or town of San Francisco a man named Stephen A. Harris, and another man named Stephen Harris. The said grant was intended for and delivered to said Stephen Harris, and not said Stephen A. Harris; and said Stephen Harris acquired, by virtue of said acts, all the title that passed or was conveyed by the said grant.

4. The said Stephen Harris left California in 1850, and never returned. He went to New Jersey, where he remained several years, then removed to Illinois, where he died on Nov. 5, 1867, leaving a will, by which he devised his property, including the land in controversy, to the plaintiffs, who are his children, and a portion of his heirs-at-law, and who at the time of the decease of said Stephen Harris were minors. Said will has been duly admitted to probate in the State of Illinois, but has never been presented to or admitted to probate by any probate or other court in the State of California.

5. There was no evidence tending to show that said Stephen Harris or said plaintiffs, or either of them, or any person claiming under them or any or either of them, ever improved said land, or ever was in the actual possession or occupation of said land or of any part thereof.

6. On May 1, 1854, Stephen A. Harris, at San Francisco, by deed in due form and duly recorded, conveyed said land to one

Blackstone. All the right, title, and interest thus acquired by said Blackstone, by sundry mesne conveyances in due form and duly recorded, became on June 22, 1865, vested in said defendants for a valuable consideration paid, and without notice of the claim of Stephen Harris or said plaintiffs, or either of them.

7. In the spring of 1864 one Jenkins, one of said grantors of defendants, took actual possession of said land, claiming title under one of said mesne conveyances from said Blackstone, fenced and occupied said lands; and he and his several grantees, down to and including said defendants, have since said spring of 1864 down to the present time been in the actual, peaceable, open, continuous, exclusive, and adverse possession of said land, claiming title thereto in good faith against all the world, under said several conveyances from Stephen A. Harris, Blackstone, and their grantees.

8. There was no evidence tending to show that any party was in the actual occupation or possession of said land or any part thereof on the first day of January, 1855, or at any time between that date and the first day of July, 1855.

9. The plaintiff, Edward H. Harris, attained his majority in March, 1869, and Letitia Harris Shimer, the other plaintiff, her majority in May, 1868.

The court thereupon concluded as matter of law, —

1. That the adverse possession of the defendants' grantors having commenced in the spring of 1864, the Statute of Limitations began to run as early at least as July 1, 1864, the date of the act of Congress mentioned in the first finding of facts, at which time the title of the city of San Francisco to its municipal lands, situate within the boundaries of the charter of 1851, became perfect.

2. That the cause of action having accrued, and the Statute of Limitations having commenced to run during the lifetime of Stephen Harris, its running was not interrupted by his subsequent decease, and the descent of such right of action to the plaintiffs while minors and under a disability to sue.

3. That the defendants and their grantees having been in the continuous adverse possession of the lands for a period of more than five years subsequent to July 1, 1864, and before the com-

mencement of this action, and there being no disability to sue when the cause of action first accrued, the action is barred.

Judgment having been rendered for the defendants, the plaintiffs sued out this writ of error.

*Mr. D. William Douthitt* for the plaintiff in error.
*Mr. S. M. Wilson, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Actual title to the lot in controversy is claimed by the plaintiffs as devisees and heirs of Stephen Harris, deceased, by virtue of an ordinance of the city, which, as they allege, was subsequently ratified by an act of Congress. Opposed to that, the theory of the defendants is that the city ordinance granted the lot to Stephen A. Harris, under whom they derive title, and that inasmuch as they have been in the open adverse possession of the same, claiming title, for more than five years, the title of the plaintiffs, if any they or their testator ever had, is barred by the Statute of Limitations.

Possession being in the defendants, the plaintiffs brought ejectment, and the defendants appeared and pleaded as follows: 1. The general issue. 2. That they were seised in fee-simple of the premises. 3. That the title and right of possession of the plaintiffs were barred by the Statute of Limitations.

Pursuant to the act of Congress, the parties waived a jury and submitted the evidence to the court. Special findings were filed by the judge presiding, with his conclusions of law, as exhibited in the record. Hearing was had, and the court rendered judgment in favor of the defendants, and the plaintiffs sued out the present writ of error.

Three errors are assigned, as follows: 1. That the court erred in the conclusion of law that the Statute of Limitations began to run as early as July 1, 1864, as found in their first conclusion of law. 2. That the court erred in the conclusion that the defendants were in possession of the premises for more than five years subsequent to the time when the Statute of Limitations commenced to run. 3. That the court erred in their fourth conclusion of law, that the defendants were entitled to judgment.

Actions of the kind cannot be maintained in that State, unless

it appears that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises in question within five years before the commencement of such action. Stats. Cal. 1863, 326 ; 2 Code, sect. 318.

From the findings of the Circuit Court it appears that the lot in controversy is within the corporate limits of the city, and that it is situated west of Larkin Street and northwest of Johnson Street, as they existed prior to the passage of the ordinances, which were afterwards ratified by the act of the legislature of the State. Stats. Cal. 1858, 53. Said land is also within the boundaries designating the lands to which the right and title of the United States were relinquished and granted to the city and its successors. 13 Stat. 333, sect. 5.

Prior to the incorporation of San Francisco the locality was known as the pueblo or town by that name ; and the findings of the court show that on Sept. 25, 1848, the alcalde of the pueblo made a grant in due form of the land in controversy to a party designated in the instrument by the name of Stephen A. Harris, which grant was duly recorded in the official book of records kept for that purpose; that at that date there was a man residing in that pueblo by the name of Stephen A. Harris and another man by the name of Stephen Harris ; that the grant was intended for and delivered to the latter and not to Stephen A. Harris; and that Stephen Harris, to whom the grant was delivered, acquired all the title that passed or was conveyed by the grant of the alcalde. It also appears that Stephen Harris, two years later, left California, and that he never returned to that State ; that he went to New Jersey, where he remained several years, and then removed to Illinois, where, on the 5th of November, 1867, he died, leaving a will, by which he devised his property, including the land in controversy, to the plaintiffs, who are his children.

By the fifth finding of the court it appears that there was no evidence introduced tending to show that the deceased, or the plaintiffs, or any person claiming through or under them, ever improved the land, or was ever in the actual possession or occupation of the land or any part of the same. On the other hand, it appears that Stephen A. Harris, May 1, 1854, conveyed the land to the person named in the sixth finding, by deed in

due form, which was duly recorded, and that all the right, title, and interest thus acquired by the grantee by sundry mesne conveyances subsequently vested in the defendants for a valuable consideration, without notice of the claim of the plaintiffs or their testator.

.There was no evidence to show that any party was in actual occupation of the land Jan. 1, 1855, or any time between that date and the first day of July of the same year; but the seventh finding of the court shows that one of the grantors of the defendants, in the spring of 1864, took actual possession of the land, claiming title under one of the said mesne conveyances, and that he fenced and occupied the lands, and that he and his several grantees, including the defendants, have since that time to the present been in the actual, peaceable, open, continuous, exclusive, and adverse possession of the land, claiming title thereto in good faith against all the world, under the said several mesne conveyances.

Sect. 5 of the act of Congress of July 1, 1864, relinquished to the city all the right and title of the United States to the lands within the corporate limits of the city, as defined in the act of incorporation passed by the State legislature, and of course the title of the city to those lands became absolute on that day. *Lynch* v. *Bernal,* 9 Wall. 316; *Montgomery* v. *Bevans,* 1 Sawyer, 653; 13 Stat. 333.

. Infancy is not set up in this case, and if it were, it could not avail the plaintiffs, as the ninth finding of the court shows that the minor plaintiffs arrived at full age more than a year before the suit was commenced.

Lands lying west of Larkin Street and southwest of Johnson Street were relinquished to the possessors, subject to the right. of the city to take possession of the same if wanted for public purposes, without compensation; but the lot in controversy is not within that reservation, as the first finding of the court shows that it is situated northwest of Johnson Street.

Appended to the findings of fact are the conclusions of law pronounced by the Circuit Court. They are as follows: 1. That the adverse possession of the grantors of the defendants commenced in the spring of 1864, and that the Statute of Limitations began to run as early at least as the first day of July of

that year, when the title of the city to the municipal lands within its boundaries became perfect under the act of Congress, to which reference has already been made.

Authorities to show that the facts stated in the seventh finding of the court amount to an adverse possession of the lot in controversy, within the meaning of the State statute, are quite unnecessary, as the proposition is too plain for argument. Angell, Limitations (6th ed.), sect. 394; *Green* v. *Liter*, 8 Cranch, 229.

Cases frequently arise where the property is so situated as not to admit of use or residence, and in such cases neither actual occupation, cultivation, nor residence are absolutely necessary to constitute legal possession, if the continued claim of the party is evidenced by such public acts of ownership as the owner would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. *Ewing* v. *Burnet*, 11 Pet. 41; *Jackson* v. *Howe*, 14 Johns. N. Y. 405; *Arrington* v. *Liscom*, 34 Cal. 365; *Proprietors of the Kennebec Purchase* v. *Skinner*, 4 Mass. 416.

Apply the rule to the case which the foregoing authorities establish, and it is clear that the first conclusion of law adopted by the Circuit Court is correct, as the seventh finding of facts shows that the defendants, from the date of the act of Congress confirming the title of the city to her municipal land to the date of the judgment, were in the actual, peaceable, open, continuous, exclusive, and adverse possession of the land, claiming title thereto in good faith against all the world, which is certainly a bar to the plaintiffs' right of action under the statute of the State.

Nor is there any valid objection to the second conclusion of law adopted by the Circuit Court, which was that the cause of action having accrued and the Statute of Limitations having commenced to run during the lifetime of the devisor of the plaintiffs, the running of the statute was not interrupted by his subsequent decease and the descent of the right of action to the plaintiffs, though minors at the time and under disability to sue.

Decided cases of a standard character support that proposition, and the court is of the opinion that it is correct. *Jackson*

v. *Moore,* 13 Johns. (N. Y.) 513; *Jackson* v. *Robins,* 15 id. 169; s. c. 16 id. 537; *Fleming* v. *Griswold,* 3 Hill (N. Y.), 85; *Becker* v. *Van Valkenburgh,* 29 Barb. (N. Y.) 319.

When the statute once begins to run, says Angell, it will continue to run without being impeded by any subsequent disability. *Smith* v. *Hill,* 1 Wils. 134; Angell, Limitations (6th ed.), sect. 477; *Currier* v. *Gale,* 3 Allen (Mass.), 328; *Durouse* v. *Jones,* 4 T. R. 301; *Jackson* v. *Wheat,* 18 Johns. (N. Y.) 40; *Welden* v. *Gratz,* 1 Wheat. 292.

Decisive support to the third conclusion of the Circuit Court is also derived from the authorities cited to sustain the second. Continuous adverse possession of the land, say the court in their third conclusion, having been held by the defendants and their grantors for a period of more than five years subsequent to the time when the statute began to run and before the action was commenced, the action is barred, as there was no disability to sue when the cause of action first accrued.

Suppose that is so, then clearly the defendants were entitled to judgment, and there is no error in the record.

*Judgment affirmed.*