**BYRUM et al. v. CITY OF SHAWNEE et al.**

No. 12213—Opinion Filed July 12, 1921.

Rehearing Denied Aug. 26, 1921.

(Syllabus.)

1. **Municipal Corporations—Power to Issue Securities—Legislative Authority.**
Municipal corporations cannot issue bonds or other like securities unless the power to do so is conferred by legislative authority either express or clearly implied.

2. **Same—Charter Powers—Use of Street Improvement Bonds.**
Record examined, and held, that section 16, art. 9, of the city charter does not confer power upon the city to issue street improvement bonds for the construction of street intersections and alley crossings where the city elects to pay the same out of the general revenues of the city.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by J. M. Byrum and J. H. Scott against the City of Shawnee and Harry Tidd. Judgment for defendants, and plaintiffs bring error. Reversed.

Iris Saunders, for plaintiffs in error.

Wyatt & Waldrep, for City of Shawnee.

G. A. Paul, for Harry Tidd.

KANE, J. The questions for review in the above entitled cause are presented by an agreed statement of facts filed in the court below pursuant to statute. The facts agreed upon, in so far as it is necessary to state them, may be briefly summarized as follows:

In July, 1911, the city of Shawnee adopted a charter form of government, the charter, among other things, providing that the State Paving Law of April 17, 1908, shall be the organic law of the city in reference to the pavement and improvement of its streets and alleys.

Another section of the charter (sec. 9, art. 16) provides as follows:

"The mayor and council shall provide for the payment of the cost of improving street intersections and alley crossings, which cost shall be provided for and paid by said city, and for the purpose of paying such expenses a separate and special levy shall be made and entered against all the property of said city at the next annual tax levy after such estimate is made, which said expense shall embrace the pro rata part of the expense of advertising and making profiles and specifications, together with the expense charged by the city engineer, superintendence, and in all other respects, but the city may at its option arrange for the payment in five or more equal annual payments, and the board of appraisers appointed for ascertaining and assessing a portion of such expense as may be charged to the street or steam railway companies, or to either of them, and to the city."

After the adoption of this charter the city decided to permanently improve certain of its streets by paving, curbing, and guttering the same, and in that behalf passed certain ordinances and resolutions and entered into certain contracts providing for the issuance of two sets of street improvement bonds. The first set of street improvement bonds, which were a charge against the specific property to be improved on a benefit basis, were issued strictly in accordance with the street improvement laws contained in article 12, ch. 10, Sess. Laws 1910, which, as we have seen, were also adopted by the

charter as the organic law of the city, and no question is raised as to their validity. The second set of street improvement bonds purport to be issued pursuant to section 16, art. 9, of the charter, supra, and were designated "Special Street Improvement Bonds." They were issued in payment of the paving of street intersections and alley crossings and were payable in ten equal annual installments, with interest at 7 per cent. per annum. Both sets of bonds were to be delivered to the defendant in error Harry Tidd, the paving contractor, in payment for the entire paving improvements. In relation to the second set of bonds it was agreed between the city and the paving contractor "that said bonds when so issued shall be a direct charge and assessment against all the taxable property of said city; said bonds when so issued shall be deposited with the city treasurer to be by the city treasurer delivered to the said contractor in payment of the cost of the construction of said intersections and alley crossings, or any part thereof from time to time upon the completion and acceptance by said city and upon the certificate and recommendation of the city engineer showing the completion and acceptance thereof. * * * It is further agreed by and between the parties hereto that said city shall cause to be levied against all taxable property in said city annually a sum sufficient to pay the said maturing special improvement bonds and the interest due annually thereon. And the said city does hereby pledge in full faith, credit and revenue of said city for the purpose of paying said special improvement bonds and interest coupons thereon."

The parties agree that the following questions present the propositions of law arising out of their agreed case:

(1) Can the city of Shawnee levy an annual tax for the payment of the cost of improving the street intersections and alley crossings on account of the present indebtedness of said city without violating the provisions of section 26, art. 10, of the Constitution, limiting the indebtedness of said city to five (5 %) per cent. of the assessed valuation of the property for the year 1920?

(2) Can the city legally bind the taxpayers to the payment of interest on deferred payments at the rate of seven (7 %) per cent. per annum on the bonds issued in payment for the cost of the said street intersections and alley crossings?

(3) Has the city power under its charter provisions to issue a special street improvement bond or warrant bearing seven (7 %) per cent. interest in payment for the cost of said street intersections and alley crossings?

(4) Has the city authority to obligate itself under the provisions of the charter to provide the fund or to guarantee the payment of the street improvement bonds promptly at their maturity and reimburse itself through the medium of the collections from special assessments and penalties arising therefrom?

(5) Are street intersections in the nature of public utilities?

(6) Do the obligations of the city with reference to the levy of such taxes to pay the cost for the street intersections and alley crossings, and also to provide the fund for the payment of the street improvement bonds at their maturity, under the facts in this case, require the submission of such question to a vote of the people therefor?

The trial court found the issues in favor of the defendants; that is, he upheld the validity of the second set of bonds and rendered judgment accordingly, to reverse which this proceeding in error was commenced.

All of the questions presented for review are ably and extensively briefed by counsel for the respective parties, but in the view we take of the case the propositions of law arising out of the agreed statement of facts are so intimately related to each other that it will only be necessary to notice the propositions of law raised by the third question —Has the city power under its charter provisions to issue a special street improvement bond or warrant bearing seven (7%) per cent. interest in payment for the cost of said street intersections and alley crossings? This question must be answered in the negative.

The second set of bonds, as we have seen, purport to be issued by the city pursuant to section 9, art. 16, of the charter, and as we are unable to find any such grant of authority in the language used in that section, the case of the defendants in error necessarily fails. The charter provisions on the subject of street improvements seem to be declaratory of the law on that subject contained in article 12, ch. 10, Rev. Laws 1910, and section 9, with some immaterial variations, provides for the exercise of the discretion granted to the mayor and council of the city by the second proviso of section 619, Sess. Laws 1910, which, after providing that the lots, pieces, or parcels fronting or abutting upon any street improvements shall be chargeable with the cost thereof upon a benefit basis, etc., further provides that the mayor and council may in their discretion provide for the payment of the cost of improving street intersections and alley crossings out

of the general revenue as provided in section 575.

Section 9, supra, as we view it, merely provides for the payment of the cost of street intersections and alley crossings out of the general revenue of the city and for the purpose of providing a fund, provides that a separate and special levy shall be made and entered against all the property of said city at the next annual tax levy after which such estimate is made, provided, the city may at its option arrange for the payment in five or more equal annual payments. Conceding that this section was a proper subject for municipal action, we are unable to perceive that it authorizes a bond issue by the city either directly or by clear implication.

It is well settled that municipal corporations cannot issue bonds or other like securities unless the power to do so is conferred by legislative authority, either express or clearly implied. 28 Cyc. 1575.

The charter, as well as the general laws of the state on street improvements, authorizes the issuance of street improvement bonds in two cases only: (1) By section 625, Rev. Laws 1910, where the assessment is charged against the property to be improved on a benefit basis; and (2) by section 575, where the city elects to borrow money for the improvement of street intersections, etc. While the proceeds to be derived from a levy made pursuant to section 16, art. 9, possibly may be pledged to the contractor in advance of their collection in some proper way, we are convinced that there is no provision either in the charter or in the general laws of the state providing for the issuance of street improvement bonds where the city, as in the case at bar, elects to provide for the payment of the cost of improving street intersections and alley crossings out of the general revenues of the city.

As all the other questions raised turn on the power of the city to issue bonds for the purpose of paying the cost of improving street intersections and alley crossings, the conclusion we have reached on that question seems to be decisive of the whole case.

For the reasons stated, the judgment of the trial court is reversed.

PITCHFORD, V. C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.