### CITY OF CHICKASHA v. FOSTER.

No. 24482.   June 4, 1935.

Rehearing Denied July 16, 1935.

J. D. Carmichael and Barefoot & Carmichael, for plaintiff in error.

Bailey & Hammerly, for defendant in error.

RILEY, J.   Defendant in error, plaintiff below, recovered a judgment against the city of Chickasha in the sum of $2,760.35, and interest from July 25, 1932, based on five street improvement certificates, in default, owned and held by plaintiff and issued by the city of Chickasha, dated February 6, 1908, and delivered to the contractor who constructed the grading, curbing, guttering, and paving in district No. 2 of said city.

A jury being waived, the cause was tried to the court upon an agreed statement of facts. It thus appears that on January 2, 1908, the defendant city and Cleveland Trinidad Paving Company entered into a contract for the improvement mentioned.

For and in consideration of the construction by the contractor, the city agreed to pay a stipulated sum, and it was provided that:

"Said payments to first party shall be made in improvement certificates to be issued by said city in anticipation of assessments against the lots and parcels of land abutting upon the portion of said street so improved, under and pursuant to the Act of Congress approved April 26, 1906 entitled 'An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes,' said certificates to be of the form and wording and be authorized by an ordinance of the city council of said city, the same as the form of ordinance hereto attached, including the form of such certificate. * * *"

An assessing ordinance, No. 266, was subsequently enacted, and thereafter and on March 6, 1908, by ordinance No. 271, provision was made for the issuance of improvement certificates "to pay the cost of street improvements in street improvement district No. 2 in the city of Chickasha," and section 5 of said ordinance was worded to read as follows:

"Section 5. That to provide for the payment of said certificates and the interest thereon collections shall be made by said city, of the several installments of said as-

sessments according to law, and in case of any shortage on the amount of any such assessments collected in any year, the city council shall, at the next annual levy of taxes, levy a tax upon all the taxable property within said city, sufficient to make up any shortage in the collection of said assessments, and collect said tax according to law; provided that the city of Chickasha hereby reserves and does not waive any right to collect any such amounts so paid on account of such shortage."

The form of the improvement certificate, approved by the ordinance, contained the following statement:

"This certificate is one of a series of like date and tenor issued by said city of Chickasha for the purpose of paying the amount due for cost of construction of street improvements in street improvement district No. 2, legally established in said city under and by authority of and in compliance with the provisions of section 26, of an Act of Congress, entitled, 'An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes', approved April 26, 1906, and in compliance with the Constitution of the State of Oklahoma, and other laws in force in the said state, and in pursuance of ordinances of said city duly passed, approved, recorded, authenticated and published has been duly made for the collection annually of taxes and assessments sufficient to pay the interest to accrue on this certificate, as it falls due, and to constitute a sinking fund for payment of the principal sum at maturity, and that all acts, conditions and things required to be done and to exist precedent to and in the making of said improvements, and in the issuance of this certificate, in order to make the same a legal, valid and binding obligation of said city, have been properly done and performed, and do exist in regular and due form as required by said Constitution and laws."

It is agreed by the parties that the laws in force in the Indian Territory immediately prior to statehood are controlling under the provisions of sections 1 to 12, inclusive, of the Schedule to the Constitution of the state of Oklahoma.

The contract, ordinances, and improvement certificates all refer to the Act of Congress, approved April 26, 1906 entitled, "An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes", as authority for the improvement and issuance of certificates in payment therefor. Section 26, as a part thereof, reads:

"That in addition to the powers now conferred by law, all municipalities in the Indian Territory having a population of over 2,000 to be determined by the last census taken under any provision of law or ordinance of the council of such municipality, are hereby authorized and empowered to order improvements of the streets or alleys; * * * and said council is empowered and authorized to make assessments and levy taxes * * * for the purpose of grading, paving, macadamizing, curbing, or guttering streets and alleys, or building sidewalks upon and along any street, roadway or alley within the limits of such municipality, and the cost of such grading, paving, macadamizing, curbing, guttering, or sidewalk constructed, or other improvements under authority of this section, shall be so assessed against the abutting property as to require each parcel of land to bear the cost of such grading, paving, macadamizing, curbing guttering, or sidewalks, as far as it abuts thereon, and in case of streets or alleys to the center thereof; and the cost of street intersections or crossings may be borne by the city or apportioned to the quarter blocks abutting thereon upon the same basis. The special assessments provided for by this section and the amount to be charged against each lot or parcel of land shall be fixed by the city council or under its authority and shall become a lien on such abutting property, which may be enforced as other taxes are enforced under the laws in force in the Indian Territory. The total amount charged against any tract or parcel of land shall not exceed 20 per centum of its assessed value, and there shall not be required to be paid thereon exceeding one per centum per annum on the assessed value and interest at six per centum on the deferred payments.

"For the purpose of paying for such improvements, the city council of such municipalities is hereby authorized to issue improvement script or certificates for the amount due for such improvements, said script or certificates to be payable in annual installments and to bear interest from date at the rate of six per centum per annum but no improvement script shall be issued or sold for less than its par value. All of said municipalities are hereby authorized to pass all ordinances necessary to carry into effect the above provisions and for the purpose of doing so may divide such municipality into improvement districts."

For reversal of the judgment it is contended that:

(1) The Cleveland Trinidad Paving Company agreed to and did make the improvements in question and agreed to and did accept, at face value, the certificates in anticipation of assessments against the lots and parcels of land abutting upon the streets so improved, in full and complete satisfaction of the contract, and the de-

fendant city did not assume, and it was not intended that it should incur, any direct liability under the contract.

(2) The defendant city of Chickasha was without power to incur an indebtedness payable in 20 years for the purpose of paving its streets, and without authority to issue the improvement certificates and make them a liability of and direct charge against the defendant city.

We shall consider the last contention first, for it is manifest that an assumption of general liability of expense on the part of the city is of no avail in the event the city lacked the power to so assume such indebtedness.

The Indian Territory, prior to its admission into the Union as a state, was an unorganized territory, and without political entity, in that the Congress never provided a territorial government for it. It was entirely subject to control by the general government of the United States. As a consequence, cities in that territory, including the defendant city, possessed only such powers and rightfully exercised only such authority as were granted by or necessarily implied from the acts of Congress. 62 C. J. sec. 8, p. 789; Ex parte Lane, 135 U. S. 443, 34 L. Ed. 219; C., R. I. & P. Ry. Co. v. Gist, 79 Okla. 8, 190 P. 878.

Section 31 of the Act of Congress approved May 2, 1890, 26 Stat. at L. 81, extended over and put in force in Indian Territory certain laws of the state of Arkansas. These laws were known as Mansfield's Digest. Included in these laws was chapter 29, relating to municipal corporations, Carter's Ind. Terr. Stats., chapter 15.

On June 28, 1898, the act commonly known as the Curtis Act, 30 Stat. at L. 495 (Carter's Ind. Terr. Stat. chapter 3a), was adopted. Section 14 of this act made provision for the incorporation of cities and towns in the Indian Territory having 200 or more residents, and extended and put in force certain laws of the state of Arkansas for the government of such cities and towns. Provision was thereby made for the establishment by such cities and towns of a system of free public schools (secs. 6258-6276, incl., Mansfield's Digest), but there was no provision or grant of power whereby such cities or towns could improve or pave streets and pay therefor as a general cost of government. Neither could such cities or towns issue bonds or become indebted for any purpose.

The first act permitting such cities and towns to contract debts and issue bonds was approved May 19, 1902 (32 Stat. at L. 200). It authorized the issuance of bonds for construction of sewers, water works, and schoolhouses. It limited the privilege to "any incorporated city or town in the Indian Territory having a population of 2,-000 or more". A limitation was provided as to valuation and a requirement was made for a ⅔ vote of the qualified voters voting at an election held for the purpose. Other restrictions were imposed.

On July 1, 1902, the act commonly known as the Choctaw and Chickasaw Treaty was passed. It was ratified September 25, 1902 (32 Stat. at L. 641). Section 55 of that act authorized municipalities in the two nations, with the approval of the Secretary of the Interior, to issue bonds and borrow money thereon for sanitary purposes, and for the construction of sewers, lighting plants, water works and schoolhouses subject to certain restrictions.

And finally on April 26, 1906, Congress provided for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes (34 Stat. at L. 137), and it was under section 26 thereof that the defendant city contracted for improvements and issued improvement certificates upon which this action is predicated.

Thus we observe that the only authorization empowering the defendant city to act as hereinbefore set forth by the terms of the act directed and commanded the said city to assess the cost of improvements against the abutting property. There was provision that cost of street intersections and crossings might be borne by the city or apportioned to the quarter blocks abutting thereon.

Authorization thereby existed for the issuance of improvement certificates appropriate for such purposes and none other. There was no authorization for the defendant city to improve its streets generally at the cost of the city. The only exception was that contained in the clause of section 26, Id.:

"And the cost of the street intersections or crossings may be borne by the city, or apportioned to the quarter blocks abutting thereon upon the same basis."

The city was empowered in the alternative to assess cost of improving street intersections or crossings against the city; pos-

sibly it was empowered to create a debt payable in future annual installments to pay for such improvements limited to street intersections and crossings, but the power to issue bonds rather than to pay for such indebtedness by assessments is doubtful. Byrum v. City of Shawnee, 83 Okla. 16, 200 P. 183. Without deciding this issue, we may inquire whether the city, as such, assumed the indebtedness pro tanto for improvements to street intersections and crossings? Ordinance No. 266, attached to the stipulation, indicates the contrary: "And the total cost of said improvement has been ascertained and is hereby determined to be the sum of $31,430.86, to be paid by assessments against the lots and tracts of land abutting upon said avenue so constituting said street improvement district No. 2." At most it does not appear that the defendant city exercised the option of assuming such partial cost of improvements.

Thus in our decision we are bound by the general rule:

"Municipalities cannot issue bonds or other like securities unless the power to do so is conferred by legislative authority, either express or clearly implied, and any doubt as to the existence of such powers ought to be resolved against its existence." 44 C. J. 1177, sec. 4141.

And:

"Being a creature of the state and continuing its existence under the sovereign will and pressure, a municipal corporation possesses such powers and such only as the state confers upon it, subject to addition or diminution at its supreme discretion. It exercises limited delegated authority." 4 C. J. 186, sec. 185; 19 R. C. L. 993, sec. 289.

In the last above-cited decision, in consideration of comparable powers granted to a city to assume a portion of the cost for improving intersections of streets, this court held, as to "where the city elects to borrow money for the improvement of street intersections, etc.," that:

"While the proceeds to be derived from a levy made pursuant to section 16, art. 9, possibly may be pledged to the contractor in advance of their collection in some proper way, we are convinced that there is no provision either in the charter or in the general laws of the state providing for the issuance of street improvement bonds where the city, as in the case at bar, elects to provide for the payment of the cost of improving street intersections and alley crossings out of the general revenues of the city."

In the case at bar it is not shown that the city so elected to assume such cost. If it did not, then the bonds in question are not based upon betterment to the public intersecting streets, but improvements to the abutting property, and to the property liable the owners must look for payment. In such cases the cost of "the works to be constructed therein are to be paid for out of special assessment made against the property of said district, the indebtedness thereby created becomes and is an indebtedness against the property of said district, and is not an obligation or indebtedness of the city or village in which or out of a portion of which such district is created." Broad v. City of Moscow (Idaho) 99 P. 101.

In the case of German American Savings Bk. of Burlington, Iowa, v. City of Spokane (Wash.) 49 P. 542, it was held:

"The city is not liable to an action by the holders of warrants issued to the contractor making the improvements under such contract, where it was within the power of the officers of the city, of its own motion, or moved thereto by interested parties, to cause the cost of improvements to be collected, so as to make possible the payment of the warrants out of the special fund on which they were drawn." Pratt v. City of Seattle (Wash.) 189 P. 565; Gagnon v. City of Butte (Mont.) 243 P. 1085; Hoyt v. Fass (Wis.) 25 N. W. 45.

In such a case, where the city has power to assess cost of improvements against abutting property and also power to assume cost of improvements "at intersections of streets or alleys, and across public grounds which shall be borne by the city at large," it was held that the charter "did not vest in the city power to assume payment or obligation to pay in any event the expense of such improvement as a general liability, and that improvement bonds reciting that they were issued under such charter, and specifying the property assessable for their payment in accordance with a schedule of such assessments on file, are not enforceable, nor the purchase money recoverable against the city as a general liability." White River Savings Bk. of White River Junction, Vt., v. City of Superior, 148 Fed. 1; City of Brenham v. German Am. Bk., 144 U. S. 173, 36 L. Ed. 390, 12 Sup. Ct. Rep. 559.

The decision in U. S. ex rel. Concord Savings Bk. v. Mayor and Councilmen of the City of Ft. Scott, 99 U. S. 161, 25 L. Ed. 348, is distinguishable from the case at bar, for the bonds there involved were "in every just sense, debts of the city in its corporate capacity." There the authorization under which the city issued its bonds empowered

the city to pay the entire cost of paving and improving the streets. Such is not the power considered in the case before us. City of Drumright v. Exchg. Nat. Co., 164 Okla. 158, 23 P. (2d) 213.

Judgment reversed.

McNEILL, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.