**BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF TULSA,
Oklahoma, Plaintiff,**

v.

**Mac Q. WILLIAMSON, Attorney General and
Ex Officio Bond Commissioner of the State
of Oklahoma, Defendant.**

**No. 40027.**

Supreme Court of Oklahoma.

April 13, 1962.

David Hall, County Atty., Donald D. Cameron, Asst. County Atty., Tulsa, for plaintiff.

Mac Q. Williamson, Atty. Gen., Lynnie Clayton Spahn, Asst. Atty. Gen., Oklahoma City, for defendant.

BERRY, Justice.

On November 14, 1961, there was submitted to the electors of Tulsa County, Oklahoma, the proposition of whether the County should incur a bonded indebtedness of $3,800,000.00 for the purpose of acquiring a site for and building and equipping a public library. More than three-fifths of the qualified electors cast an affirmative vote. It stands admitted that this election was regularly called and conducted.

The plaintiff, Board of County Commissioners of Tulsa County, Oklahoma, hereafter referred to as "board", subsequently sought defendant's, Mac Q. Williamson, Attorney General, hereafter referred to as "defendant", approval of the bonds.

On March 14, 1962, defendant declined to approve the bonds solely because it was his opinion that the voting of bonds for a "county library" was not authorized by the Constitution nor the statutes. Following such action, board instituted this proceeding.

The sole issue presented by this proceeding is whether Tulsa County, through board, has authority, following an affirmative vote of the county's electors, to incur a bonded indebtedness for the purpose of constructing and equipping a public library.

Prior. to statehood, legislation, which presently appears as 19 O.S.1961 §§ 381 to

387 inclusive, hereafter referred to as "old statute", was adopted. It is provided in Sec. 381 that "any question involving any extraordinary outlay of money by the county or any expenditures greater in amount than can be provided for by the annual tax, or whether the county will construct any courthouse, jail, or other public buildings, or aid or construct any road or bridge, and any enterprise designed for the county, * * *" should be submitted to a vote. Secs. 382 and 383 also treated with submitting to vote a proposed levy of additional taxes for the purposes authorized by Sec. 381. Sec. 384 reads in part as follows:

"When the question submitted involves the borrowing or expenditure of money the proposition of the question must be accompanied by a proposition to authorize a tax for the payment thereof in addition to the usual taxes provided for by law; * * *"

▮▮▮ While the power of a political subdivision of a state to issue bonds must be conferred by organic law or statute, the power need not be expressly granted and may arise when clearly implied. See City of Chickasha v. Foster, 173 Okl. 217, 48 P.2d 289, and 20 C.J.S. "Counties" § 258, p. 1169. To our way of thinking, where the power to borrow is granted, the power to issue bonds is implied. In Kruesel v. Collin et al., 171 Wash. 200, 17 P.2d 854, 855 this is said:

"* * * The better rule, we think, is that, where the power to borrow is granted, the power to issue bonds is implied if the borrowing is to enable the county to perform a duty or function imposed upon it by the state. Doty v. Ellsbree, 11 Kan. 209; Lund v. Chippewa County et al., 93 Wis. 640, 67 N.W. 927, 34 L.R.A. 131; Heilbron v. Mayor, etc., of Cuthbert, 96 Ga. 312, 23 S.E. 206; Rushville Gas Co. v. City of Rushville et al., 121 Ind. 206, 23 N.E. 72, 6 L.R.A. 315, 16 Am. St.Rep. 388; City of Williamsport v. Commonwealth, 84 Pa. 487, 24 Am.

Rep. 208; Commissioners of Town of Hendersonville v. C. A. Webb & Co., 148 N.C. 120, 61 S.E. 670; Bennett v. Board of Commissioners of Rockingham County, 173 N.C. 625, 92 S.E. 603, 605. In the last-cited case, it is said: '* * * When county commissioners have power to contract a debt or to provide for valid debts already contracted, they may, in the exercise of good business prudence, issue county bonds in evidence of the obligation. * * *'"

We are, therefore, of the opinion that the old statute impliedly granted to counties the power to create a bonded indebtedness for "court house, jail or other public building" purposes.

It is not here contended that a public library is not a public building. In Sharp et al. v. Police Jury of Parish of East Baton Rouge, 194 La. 220, 193 So. 594, 596, it is stated that a public library is a public building. Compare Bekins v. City of Tulsa, Okl., 299 P.2d 792, 794.

Upon the adoption of our Constitution at statehood, Art. X, Secs. 10, 26 and 27 became a part of our organic law.

It is provided in Sec. 10, supra, that "For the purpose of erecting public building in counties, cities, or school districts, the rates of taxation herein limited" may be increased not to exceed five mills by a majority vote of the qualified electors. The plan of financing which is set forth in this section is not exclusive and the section cannot be construed as superseding the statutes first herein cited in so far as same relates to and vests in a county the power to create a bonded indebtedness.

It is provided in Sec. 26, supra, that "No county, city, town, township, school district * * * shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof", provided, that an annual tax shall be provided for which

shall constitute a sinking fund for the payment of the indebtedness.

As we read the briefs of the parties, they, in effect, assert that the decisive issue is whether the old statutes served to grant counties authority to create a bonded indebtedness for public-building purposes. We add, that it is not disputed that, as hereafter pointed out, Sec. 26, supra, grants authority to counties to create a bonded indebtedness, so the issue is in fact limited to whether the old statutes serve as a grant of authority to create a bonded indebtedness within the purview of said statutes and Sec. 26.

In so far as material, Sec. 27, supra, grants express authority to "any incorporated city or town" to create a bonded indebtedness for "purchasing or constructing public utilities," the creation of which indebtedness must be authorized by "a majority of the qualified property tax paying voters". It is not contended that this section applies to counties.

It was stated in Kirk v. School District No. 24 of Greer County et al., 108 Okl. 81, 234 P. 596, 598, that Sections 26 and 27 authorize the incurring of an indebtedness and the voting of bonds in connection with such indebtedness.

As we understand defendant's contentions, he does not urge that adoption of the cited provisions of the Constitution served to supersede or nullify the provisions of the old statutes which granted implied authority to counties to create a bonded indebtedness. He does, however, contend that legislation adopted subsequent to the enactment of the old statutes, which as amended, presently appear as 19 O.S.1961 §§ 731 to 738, inclusive, did so.

In so far as material, it is provided in the last-mentioned legislation that counties, through their governing bodies and a vote of their qualified electors, may levy additional taxes for the "construction or repairing of courthouses, jails or other necessary building"; that revenue created from the additional levy shall be placed in a fund; that (Sec. 734) when the governing body considers it to be the best interest of a county "to acquire sites, purchase, erect, repair, remodel, equip and furnish a courthouse", the matter may be submitted to a vote and if three-fifths of the qualified voters vote favorably, a bonded indebtedness may be incurred. This legislation does not treat with the issue of whether the electors of a county may create a bonded indebtedness for public-building purposes other than for jail and courthouse purposes. The legislation does not for said reason treat with the matter of whether a county may incur a bonded indebtedness for public-library purposes.

The Legislature chose to formally adopt the old statutes by adopting the 1941 and 1951 Oklahoma Statutes. For that matter, this also occurred upon the Legislature formally adopting the 1910 statutes. In speaking of the effect of the last-mentioned adoption, this was said in the first paragraph of the syllabus to Barnett v. Barnett, 158 Okl. 270, 13 P.2d 104:

"'It has been held many times by this court that the Revised Laws 1910, commonly know as the "Harris-Day Code", including new legislation suggested by the codifiers and adopted by the Legislature of this state by chapter 39, Sess.Laws 1910–11, as amended by chapter 75, Sess.Laws 1913, is the established law of this state regularly and constitutionally adopted.' Herndon v. State, 16 Okl.Cr. 586, 185 P. 701;" and many other cases.

The fact that the Legislature has thrice, since enactment of the old statute, chosen to adopt the old statutes lends credence to board's contention that the Legislature has not in fact sought to supersede nor has it impliedly repealed said statutes in so far as same impliedly granted to a county power and authority to create a bonded indebtedness for public-building purposes, which power and authority we are convinced exists at present.

Defendant makes the further argument that the enactment of the hereafter men-

tioned specific permissive legislation shows that the Legislature has construed our Constitution and statutes as vesting in a county authority to create a bonded indebtedness only where such authority has been expressly granted. The Legislature enacted such legislation as to free fairs (2 O.S. 1961 § 109); aviation airports and right-of-ways therefor (3 O.S.1961 § 61); detention homes (10 O.S.1961 § 130.3); courthouses and jails (19 O.S.1961 § 734); hospitals (19 O.S.1961 § 781) and (63 O.S. 1961 § 329.5); and bridges and roads (69 O.S.1961 § 161).

While the foregoing argument is persuasive, we do not believe it is well founded. As pointed out, the Legislature, by adopting the 1910, 1941 and 1951 statutes formally made known that the old statutes met with its approval. In view of this action, we do not believe that the fact that the above-mentioned permissive legislation was enacted shows that the Legislature considered or construed the old statutes as not granting the power that plaintiff says was granted to counties. It is well known that interested parties often press for legislation and it is entirely possible that since there are no opinions in which the precise issue before us has been considered, interested parties, through an abundance of caution, sought permissive legislation.

In Lone Star Gas Co. v. Bryan County Excise Board, 193 Okl. 13, 141 P.2d 83, it was held that "Construction of a constitutional provision must not be so strict or technical as to defeat the object and purpose of its adoption", which rule, in our opinion, should be applied in construing the statutes upon which the parties rely.

■ We are of the opinion that the old statutes granted to counties power and authority to incur a bonded indebtedness for public-building purposes, therefore, for the purpose of acquiring a site for, building and equipping a public library. Our opinion in this particular is fortified by the fact that Sec. 26, supra, authorizes coun-

ties to incur a bonded indebtedness for purposes authorized by the Legislature, and since such authority was granted by the old statutes, plaintiff has both constitutional and statutory authority to create the bonded indebtedness that it seeks to create. We add, that it is to be remembered that in this case no less than three-fifths of the electors of Tulsa County solemnly agreed to the incurrence of the bonded indebtedness and that the burden arising from the indebtedness falls solely upon the taxpayers of said County.

For reasons stated, the writ of mandamus that board seeks is hereby granted, and defendant is directed to approve the bonds in controversy.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.